FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2002 DEC 11  P 3: 25

CLERK'S OFFICE
AT BALTIMORE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND _____ DEPUTY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, and the STATE OF MARYLAND, | ) ) ) ) | **AW 02 CV 4013** |
| Plaintiffs, | ) ) | |
| v. | ) | CIV. NO. _____ |
| POTOMAC ELECTRIC POWER COMPANY, SUPPORT TERMINALS OPERATING PARTNERSHIP, L.P., and SUPPORT TERMINAL SERVICES, INC. | ) ) ) ) ) | CONSENT DECREE |
| Defendants. | ) ) ) | |

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JAN 7 2003

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## I. INTRODUCTION

This Consent Decree is made and entered into by and between the United States of America

(United States), on behalf of the Under Secretary for Oceans and Atmosphere of the National Oceanic

and Atmospheric Administration (NOAA) acting on behalf of the Secretary of Commerce, the

Secretary of the Department of the Interior (DOI) acting through the U.S. Fish and Wildlife Service

(FWS), and the State of Maryland (State) through the Maryland Department of Natural Resources

(MDNR) and the Maryland Department of the Environment (MDE) and the Potomac Electric Power





INCORPORATED

8

Company (PEPCO) and Support Terminal Services Operating Partnership, L.P. and its general

partner, Support Terminal Services, Inc. (collectively, ST Services).  Collectively, PEPCO and ST

Services shall be referred to as Settling Defendants.

This action is for damages for injuries to natural resources, arising out of the discharge of

approximately 140,000 gallons of oil from the rupture in an oil pipeline causing an oil spill on or about

April 7, 2000 in the vicinity of the Chalk Point Generating Station near Aquasco, Maryland ("the

Spill").  The 51.5 mile pipeline runs from Piney Point Maryland to the Morgantown and Chalk Point

electric generating plants, through the Ryceville transfer station.  The pipeline was owned by Pepco and

operated, at least in part, by ST Services at the time of the Spill. The Pipeline crosses tidal marshes,

fringing intertidal marshes, sheltered tidal flats and freshwater marshes and swamps.

Liability for damages to natural resources shall be to the United States for natural resources

belonging to, managed by, controlled by, or appertaining to the United States.  Liability for damages to

natural resources shall be to the State of Maryland for natural resources belonging to, managed by,

controlled by, or appertaining to the State of Maryland.  The United States and Maryland share

trusteeship of the injured resources.  The United States and the State are authorized to assess injuries to

federal and state natural resources caused by releases of oil and to recover damages to: (1) restore,

rehabilitate, replace or acquire the equivalent of the injured natural resources and (2) reimburse the

Trustees for the reasonable costs of the damage assessment and restoration planning.

The United States and the State Trustees have investigated the injuries from the Spill to the

natural resources and are coordinating restoration efforts.  Studies conducted by the Trustees and other

experts identified the following injuries to natural resources and recreational services from the spill:

- Wetlands – 76 acres lightly, moderately, or heavily oiled
- Beaches – 10 acres of shoreline lightly, moderately or heavily oiled
- Ruddy ducks – 553 estimated dead
- Other birds – 143 estimated dead
- Diamondback terrapins –122 estimated dead and a 10% reduction in hatchlings for year 2000
- Muskrats – 376 estimated dead
- Fish and shellfish – estimated total biomass loss of 2,464 kg (5,432 lbs)
- Benthic communities – estimated total biomass loss of 2,256 kg (4,974 lbs.)
- Recreational services – an estimated 125,000 trips on the river affected by the spill

The Restoration Projects described in Appendix I have been determined by the Trustees to provide for the restoration or the replacement of equivalent natural resources and their services that were injured, destroyed, or lost as a result of the Spill.

The Parties agree and this Court finds, by entering this Consent Decree, that this Consent Decree has been negotiated by the Parties in good faith. Implementation of this Consent Decree is consistent with the objectives of the Oil Pollution Act, 33 U.S.C. § 2701, et seq., and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

The Settling Defendants do not admit any liability arising out of the Spill.

THEREFORE, it is ORDERED, ADJUDGED AND DECREED as follows:


## II.  DEFINITIONS

Unless otherwise expressly provided herein, terms used in this Consent Decree which are

defined in OPA, 33 U.S.C. §§ 2701, et seq., or in the regulations promulgated under OPA at 15

C.F.R. Part 990, shall have the meaning assigned to them in OPA or in such regulations.  Whenever

terms listed below are used in this Consent Decree or in the attachments attached hereto and

incorporated hereunder, the following definitions shall apply:

A.  "Complaint" shall mean the civil complaint filed in this action by the United States and the

State concurrently with lodging of this Consent Decree;

B.  "Effective Date" shall mean the date of entry of this Consent Decree by the Court.

C.  "Federal Trustees" means the National Oceanic and Atmospheric Administration (NOAA)

of the U.S. Department of Commerce and the U.S. Fish and Wildlife Service (FWS) of the U.S.

Department of the Interior (DOI);

D.  "Fund" means the Oil Spill Liability Trust Fund established pursuant to 26 U.S.C. §§ 4611

and 9509;

E.  "Interest" as that term is used in Section VII of this Consent Decree shall mean interest

accruing from the effective date of the Consent Decree, until the date of payment, at the rate set forth in

28 U.S.C. 1961.  For purposes of calculating interest due for the late payment of stipulated penalties

required by Section IX of the Consent Decree, interest shall begin to accrue on the date that the

stipulated penalties are due.  The date of judgement for the purpose of calculating the applicable interest

rate under 28 U.S.C. § 1961 shall be the date that the stipulated penalties are due.   Interest shall be

simple interest calculated on a daily basis;

F.  "Natural Resource Damages" means the damages described at Section 1002(b)(2)(A) of

4

OPA, 33 U.S.C. § 2702(b)(2)(A);

G. "Oil" means oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse and oil mixed with wastes other than dredged spoil, but does not include any substance which is specifically listed or designated as a hazardous substance under CERCLA and which is subject to the provisions of that Act.

H. "OPA" means the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, et seq.;

I. "Past Costs" shall mean all Natural Resource Damage Assessment costs, including, but not limited to, direct and indirect costs, that the Trustees have incurred in connection with the Spill but which have not been paid by the Settling Defendants;

J. "Parties" means the United States, the State, and the Settling Defendants;

K. "Plaintiffs" means the United States and the State;

L. "Restoration Plan" means the plan entitled Restoration Plan and Environmental Assessment for the April 7, 2000, Oil Spill at Chalk Point on the Patuxent River, Maryland, attached as Appendix I of this Consent Decree;

M. "Restoration Projects" shall mean both primary and compensatory restoration actions, as defined, described, and scheduled in the Restoration Plan attached in Appendix I to this Consent Decree;

N. "Settling Defendants" means PEPCO and ST Services;

O. "State" means the State of Maryland;

P. "State Settlement Agreement" means either of the two settlement agreements entered into between the State of Maryland Department of the Environment and Settling Defendants, which collectively require payment of $1,955,605 in penalties in connection with the Spill, and which are incorporated by reference and attached hereto as Appendix III and Appendix IV.

Q. "State Trustees" means the Maryland Department of Natural Resources (MDNR) and the Maryland Department of the Environment (MDE);

R. "Trustees" means the Federal Trustees and State Trustees; and

S. "United States" means the United States of America

### III.  JURISDICTION AND VENUE

For purposes of entry and enforcement of this Consent Decree only, the Parties agree that the Court has personal jurisdiction over the Parties and has jurisdiction over the subject matter of this action pursuant to Section 1017(b) of OPA, 33 U.S.C. § 2717(b), and also pursuant to 28 U.S.C. §§ 1331, 1345, and 1367. Venue is proper pursuant to Section 1017(b) of OPA, 33 U.S.C. § 2717(b); and 28 U.S.C § 1391(b).  Solely for the purposes of this Consent Decree, the Parties waive all objections and defenses to the jurisdiction of this Court, to venue in this District, and to service of process.  The Settling Defendants shall not be deemed to have admitted for any purpose the truth of any other allegation set forth in the Complaint.

### IV.  APPLICABILITY OF CONSENT DECREE

The provisions of this Consent Decree shall apply to and be binding on the United States, the State, and the Settling Defendants, their respective directors, employees, agents,

6

predecessors, subsidiaries, affiliates, parents, successors, and assigns. No change in ownership, corporate or partnership status relating to the Settling Defendants, including, but not limited to, any transfer of assets or real or personal property, shall in any way alter the responsibilities of the Settling Defendants under this Consent Decree.

## V.  NATURAL RESOURCE DAMAGE RESTORATION PROJECTS

A.  This consent decree provides for payments to the Trustees by the Settling Defendants for the costs associated with the design, implementation, oversight, and monitoring of restoration projects identified in the Restoration Plan, attached as Appendix I to this Consent Decree.  The Trustees find that the restoration projects identified in the Restoration Plan restore or replace injured natural resources and compensate the public for interim losses of natural resources and services that occurred from the date of the incident until recovery.  Services, which include natural resource services, means functions performed by a natural resource for the benefit of another natural resource and/or the public.  15 C.F.R.§ 990.30.

B. Upon the receipt of funds from the Settling Defendants, pursuant to Section VII, the Trustees agree to implement restoration projects identified in the Restoration Plan, Appendix I of this Consent Decree.  Within 45 days after the Effective Date of this Consent Decree, the Trustees shall execute and/or modify existing Memoranda of Agreement among themselves that, at minimum, provide for the following: (a) establishment of a Trustee Council to oversee all aspects of restoration, oversight, and monitoring, (b) identification of a Lead Administrative Trustee (c) procedures for the development of budgets and cost accounting, (d) identification of a

7

Lead Implementation Trustee for each restoration project, and (e) obligations of the Lead Implementation Trustee.

## VI. PAST COSTS REIMBURSEMENT

A. Not later than 30 days after the Effective Date of this Consent Decree, the Settling Defendants shall reimburse each Trustee for its Past Costs in the amounts specified below. Such payments shall represent the measure of damages for the Spill, as set forth in Section 1006(d)(1)(C) of OPA, and along with payments made pursuant to Section VII of this Consent Decree are a full and final satisfaction of the Settling Defendants' obligations and liabilities pursuant to Section 1006(a)(1) & (2). 33 U.S.C. §§ 2706(d)(1)(C) and 2706 (a)(1) & (2).

B. The Settling Defendants shall pay $10,980.22, for Past Costs incurred by DOI. The DOI Past Costs shall be paid by Electronic Funds Transfer (EFT) to the U.S. Department of Justice lockbox, referencing DOJ No. 90-5-1 1-07176 and the United States Attorney's Office file number, in accordance with the EFT instructions that shall be provided by the United States Attorney's office after lodging of this Decree. Any EFT received at the United States Department of Justice lockbox after 4:00 p.m. (Eastern Time) will be credited on the next business day. Defendants shall simultaneously deliver copies of the EFT transmittal notice to the Chief, Environmental Enforcement Section, U.S. Department of Justice, P.O. Box 7611, Washington D.C. 20044, Attn: DOJ No. 90-5-1-1-07176. Notice of the EFT shall be sent to the Parties as specified in Section VIII, as well as to:

U.S. Department of the Interior
Natural Resource Damage Assessment and Restoration Program
Attention: Restoration Fund Manager

1849 C Street, NW
Mail Stop 4449
Washington, DC  20240; and

  C.  The Settling Defendants shall pay $286,043.80 for Past Costs incurred by NOAA.  The

NOAA Past Costs shall be paid by EFT to the U.S. Department of Justice lockbox, referencing DOJ

No. 90-5-1 1-07176 and the United States Attorney's Office file number, in accordance with the EFT

instructions that shall be provided by the United States Attorney's office after lodging of this Decree.

Any EFT received at the United States Department of Justice lockbox after 4:00 p.m. (Eastern Time)

will be credited on the next business day.  Defendants shall simultaneously deliver copies of the EFT

transmittal notice to the Chief, Environmental Enforcement Section, U.S. Department of Justice, P.O.

Box 7611, Washington D.C.  20044, Attn: DOJ No. 90-5-1-1-07176.  Notice of the EFT shall be

sent to the Parties as specified in Section VIII, as well as to:

NOAA/NOS/OR&R
ATTN:  Kathy Salter, DARRF Manager
1305 East West Highway
SSMC4, Room 9331
Silver Spring, MD  20910-3281, and

D.  The Settling Defendants shall pay $11,410.87 for Past Costs incurred by MDNR.  Checks

should be made payable to Maryland Department of Natural Resources, reference "Chalk Point Oil

Spill" and be mailed to:

Sumita Chauduri, Assistant Secretary Management Services
Maryland Department of Natural Resources
580 Taylor Avenue, C-4
Annapolis, MD 21401

E. The Settling Defendants shall pay $4,790.25 for Past Costs incurred by MDE. Checks should be made payable to Maryland Department of Environment, reference AChalk Point Oil Spill, PCA #13764" and be mailed to:

Maryland Department of the Environment
POB 1417
Baltimore, MD 21203-1417

F. In the event that payments required by this Paragraph are not made within thirty (30) days of the entry of this Consent Decree by the Court, interest on the unpaid balance shall be paid commencing on the thirty-first (31st) day after entry of this Consent Decree and accruing through the date of payment. Payments of interest shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section IX. The Settling Defendants shall make all payments of interest required by this Paragraph in the manner described in this Section.

## VII. PAYMENT OF RESTORATION COSTS

A. Not later than 30 days after the Effective Date of this Consent Decree, the Settling Defendants shall pay the sum of $2,710,498 dollars to the Trustees to implement restoration projects, including the oversight and monitoring, identified in the Restoration Plan, Appendix I of this Consent Decree. Such payments shall represent the measure of damages for the Spill, as set forth in section 1006(d)(1)(A) & (B) of OPA, and along with payments made pursuant to Section VI of this Consent Decree, are a full and final satisfaction of the Settling Defendants'

obligations and liabilities pursuant to Section 1006(a)(1) & (2). 33 U.S.C. §§ 2706(d)(1)(A) & (B) and 2706 (a)(1) & (2).

B. Payment of the $2,710,498 shall be made to the DOI Natural Resource Damage Assessment and Restoration Fund (The Restoration Fund) by EFT in accordance with the "The Department of Interior Natural Resource Damage Assessment and Restoration Fund Assessment and Settlement Deposit Remittance Procedures" attached as Appendix II. Transmittal letters indicating that the EFT disbursement has occurred shall be sent to the Parties in accordance with Section VIII and to:

> Bruce Nesslage
> DOI Restoration Fund Manger
> 1849 C Street NW
> Mail Stop 4449
> Washington D.C. 20240

The EFT and transmittal letter shall reflect that the payment is being made to the "Natural Resources Damage Assessment and Restoration Fund, Acct. No. 14x5198. The Department of the Interior will assign these funds a special project number to allow the funds to be maintained as a segregated account, the "Chalk Point NRD Account," within the Restoration Fund.

C. DOI shall, in accordance with law, manage and invest funds in the Chalk Point NRD Account and any return on investments or interest accrued on the Account for use by the Trustees in connection with implementation, oversight, and monitoring of restoration projects in the Restoration Plan.

D. DOI shall hold all funds in the Chalk Point NRD Account, including return on investments or accrued interest, on behalf of the Trustees, subject to the provisions of this Consent Decree and the Memorandum of Agreement entered into by the Trustees.

## VIII. NOTICE

Whenever under the terms of this Consent Decree notice is required to be given by one Party to another, it shall be directed to the following individuals at the addresses specified below, unless it is otherwise specifically provided in this Consent Decree. Any change in the individuals designated by any Party must be made in writing to the other Parties. All notices shall be sent by first-class mail.

For DOJ:    Chief, Environmental and Enforcement Section
Environment and Natural Resource Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044-7611
DJ # 90-5-1-1-07673

For NOAA:    Sharon Shutler, Esq.
NOAA Office of General Counsel
1315 East-West Highway, Room 15132
Silver Spring, MD 20910
Tel. (301) 713-1217

For DOI:    Shelly Hall, Esq.
Office of the Solicitor
U.S. Department of the Interior
1849 C St. NW, MS-6557
Washington, DC  20240

For MDNR:    Joe Gill, Esq.
Office of the Attorney General

MDNR
Tawes State Office Bldg.
580 Taylor Ave C4
Annapolis, MD 21224


For MDE:    Stephanie Williams, Esq.
            Office of Attorney General
            MDE
            1800 Washington Boulevard
            Suite 6048
            Baltimore, MD 21230

For PEPCO:  Michael Boland, Esq.
            PEPCO
            Room 1113
            701 9th St. N.W.
            Washington D.C. 20068

For ST          Duane A. Siler, Esq.
Services:   Patton Boggs LLP
            2550 M Street, N.W.
            Washington, DC 20037

## IX.  STIPULATED PENALTIES

A. The Settling Defendants shall be liable for stipulated penalties in the amounts set forth below

to the United States and the State for the Settling Defendants' failure to comply with the requirements

of this Consent Decree. "Compliance" by the Settling Defendants means the timely completion of the

payments pursuant to Sections VI and VII.

B. Failure to make the payments pursuant to Sections VI and VII in a timely manner will result

in the following penalties:

Penalty per Violation
per Day                          Period of Noncompliance

| $ 500 | 1st through 7th day |
|---|---|
| $1,000 | 8th through 30th day |
| $1,500 | 31st day and beyond |

C. All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the final day in which the payment is received by the Trustees. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

D. Following the determination by the Trustees, individually or jointly, that the Settling Defendants have failed to comply with one of the requirements of this Consent Decree, the Trustees may give the Settling Defendants written notification of the same and describe the noncompliance. The Trustees may send the Settling Defendants a written demand for the payment of penalties. Penalties shall accrue and are due as provided in this Section regardless of whether the Trustees have notified the Settling Defendants of a violation.

E. All penalties due under this Section shall be due and payable within 30 days of the Settling Defendants' receipt of a demand for payment from the Trustees. Stipulated penalties shall be paid 50% to the United States and 50% to the State.

F. All payments to the United States under this Section shall be paid by EFT. The payment shall be sent to the United States Department of Justice lockbox, referencing DOJ No. 90-5-1 1-07176 and the United States Attorney's Office file number, in accordance with the EFT instructions that shall be provided by the United States Attorney's office after lodging of this Decree. Any EFT received at the United States Department of Justice lockbox after 4:00 p.m. (Eastern Time) will be credited on the next business day. Defendants shall simultaneously

14

deliver copies of the EFT transmittal notice to the Chief, Environmental Enforcement Section, U.S. Department of Justice, P.O. Box 7611, Washington D.C. 20044, Attn: DOJ No. 90-5-1-1-07176. Notice of the EFT shall be sent to the Parties as specified in Section VIII.

G. In the event the Settling Defendants fail to pay stipulated penalties when due, the United States and/or the State may institute a legal proceeding to collect such penalties, as well as interest accruing on any unpaid balance, as provided by law.

H. Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of the Settling Defendants' violation of this Consent Decree.

I. Notwithstanding any other provision of this Section, the United States and the State, in their unreviewable discretion, may waive any portion of stipulated penalties owed to them that have accrued, pursuant to this Consent Decree.

## X. COVENANT NOT TO SUE BY PLAINTIFFS

A. In consideration of the payments that will be made by the Settling Defendants under the terms of this Consent Decree, and except as specifically provided in Section XI, the United States covenants not to sue or take administrative action against the Settling Defendants pursuant to Section 1002(b)(2)(A) of OPA, 33 U.S.C. § 2702(b)(2)(A), to recover the Natural Resource Damages resulting from the Spill or to assess or impose a civil penalty under Section 311 of the Clean Water Act, 33 U.S.C. § 1321, in connection with the Spill. This covenant not to sue shall take effect upon the date of entry of this Consent Decree by the Court, except that the covenant not to sue shall be conditioned

15

upon the payment of costs required by Sections VI and VII. This covenant not to sue extends only to the Settling Defendants and their respective directors, employees, agents, predecessors, subsidiaries, affiliates, parents, successors, and assigns and does not extend to any other person.

B. In consideration of the payments that will be made by the Settling Defendants under the terms of this Consent Decree, and except as specifically provided in Section XI, the State covenants not to sue or take administrative action against the Settling Defendants or the Oil Spill Liability Trust Fund pursuant to Sections 1002(b)(2)(A) of OPA, 33 U.S.C. § 2702(b)(2)(A), for any and all civil claims for Natural Resource Damages due to the Spill. This covenant not to sue shall take effect upon the date of entry of this Consent Decree by the Court, except that the covenant not to sue shall be conditioned upon the payment of costs required by Sections VI and VII. This covenant not to sue extends only to the Settling Defendants and their respective directors, employees, agents, predecessors, subsidiaries, affiliates, parents, successors, and assigns and does not extend to any other person.

## XI. RESERVATION OF RIGHTS BY PLAINTIFFS

A. Notwithstanding any other provision of this Consent Decree, the United States and the State of Maryland reserve the right to institute proceedings against the Settling Defendants in this action or in a new action seeking recovery of natural resource damages resulting from the Spill based on (1) conditions unknown to the United States or the State of Maryland as of the date of lodging of this Consent Decree that contribute to the injury to, destruction of, or loss of natural resources; or (2) new information received by the United States of the State of Maryland after the date of lodging of this Consent Decree which indicates there is injury to, destruction of, or loss of resources of a type

16

unknown to the United States or State of Maryland as of the date of execution of this Consent Decree.

B.  Furthermore, this Consent Decree is without prejudice to the rights of the United States or the State of Maryland against the Settling Defendants with respect to all matters other than those expressly specified in Section X including, but not limited to, the following:

1.  claims based on a failure of the Settling Defendants to meet a requirement of this Consent Decree;

2.  any and all criminal liability;

3.  past, present, or future releases, discharges, or spills of oil other than the Spill described in this Consent Decree;

4.  subrogated claims under Section 1015 of OPA, 33 U.S.C. § 2715, for any amounts paid or to be paid by the Fund to any person for removal costs or damages in connection with the Spill;

5.  for the United States, with respect to PEPCO, any and all claims for civil penalties associated with the Spill, arising under 33 U.S.C § 1321, in the event PEPCO fails to timely pay any portion or all of the $950,000 civil penalty required under the terms of the July 8, 2002 Settlement Agreement with the State of Maryland (attached as Appendix III.);

6.  for the United States, with respect to ST Services, any and all claims for civil penalties associated with the Spill, arising under 33 U.S.C § 1321, in the event ST Services or Lexington Insurance Company fails to timely pay any portion or all of the $1,005,605 civil penalty required

17

under the terms of the July 8, 2002 Settlement Agreement with the State of Maryland (attached as
Appendix IV.); and,

7. any and all removal and monitoring costs (except costs of oversight and monitoring identified
in the Restoration Plan, Appendix I of this Consent Decree) incurred by the United States in connection
with the Spill.

C. With respect to paragraphs (B)(5) and (B)(6) above, if any portion of the penalties due
under either of the State Settlement Agreements is not made by the date specified in the Settlement
Agreements, the State of Maryland agrees to notify the United States Department of Justice within 30
(thirty) days of such failure.

## XII. COVENANTS BY SETTLING DEFENDANTS

A. The Settling Defendants hereby covenant not to sue and agree not to assert any claims or
causes of action against the Plaintiffs, their employees, agents, experts, contractors, or the Oil Spill
Liability Trust Fund with respect to the Spill including, but not limited to any claims arising out of
activities related to the Restoration Projects, including without limitation, claims based on the Trustees'
selection of the Restoration Projects.

B. The Settling Defendants hereby covenant not to oppose entry of this Consent Decree by
this Court or to challenge any provision of this Consent Decree.

C. Notwithstanding any other provision of this Consent Decree, this Consent Decree is without
prejudice to all rights of the Settling Defendants with respect to all matters other than those expressly
specified in the covenants set forth in this Section. In the event that the United States or the State

exercises its rights pursuant to Section XI, and except as provided in Section XIII.B, the Settling Defendants reserve the right to assert any defenses that they may have with respect to the matters raised by the United States or the State pursuant to Section XI.A.

XIII.  EFFECT OF SETTLEMENT

A.  Nothing in this Consent Decree shall be construed to create any right in, or grant any cause of action to, any person not a Party to this Consent Decree.  Each of the Parties expressly reserves any and all rights (including, but not limited to, any right of contribution), defenses, claims, demands, and causes of action which each party may have with respect to this Oil Spill against any person not a Party hereto.

B.  In any subsequent administrative or judicial proceeding initiated by the Plaintiffs with respect to this Oil Spill, Settling Defendants shall not assert, and may not maintain any defense or claim based on the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, statute of limitations, or any other defenses based upon the contention that the claims raised by the Plaintiffs in the subsequent proceeding were or should have been brought in the instant case, provided, however, that nothing in this Paragraph affects the enforceability of the covenant not to sue set forth in Section X.

XIV.  CERTIFICATION

A.  Each Settling Defendant certifies that, to the best of its knowledge and belief, it has fully and accurately disclosed to the Plaintiffs all information requested by the Plaintiffs in the possession of the Settling Defendant's officers, employees, contractors and agents, that relates in any way to the discharge of oil due to the Spill.

19

B. Each undersigned representative of a Party to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

## XV.  VOIDABILITY

If for any reason the District Court should decline to approve entry of this Consent Decree in the form presented, or if the United States or the State withdraws its consent pursuant to Section XVIII, this Consent Decree and the settlement embodied herein shall be voidable by written notice to the other Parties at the sole discretion of any Party to this Consent Decree, and the terms hereof may not be used as evidence in any litigation.

## XVI.  COMPLIANCE WITH OTHER LAWS

This Consent Decree shall not be construed in any way to relieve the Settling Defendants or any other person or entity from the obligation to comply with any Federal, State, or local law.

## XVII.  RETENTION OF JURISDICTION

This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or material modification of this Consent Decree, or to effectuate or enforce compliance with its terms.

## XVIII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

The Parties agree and acknowledge that final approval by the United States and the State and

entry of this Consent Decree is subject to a thirty-day (30) period for public notice and comment in accordance with U.S. Department of Justice policy. The United States and the State reserve the right to withdraw or withhold their consent if comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. The Settling Defendants consent to the entry of this Consent Decree without further notice.

## XIX.  TERMINATION

Any Party may apply to the Court to terminate this Consent Decree after the Settling Defendants have paid all costs as provided in Sections VI and VII, and all penalties due pursuant to Section IX.

## XX.  EFFECTIVE DATE

This Consent Decree shall be effective upon the date of its entry by the Court.

## XXI.  SIGNATORIES/SERVICE

A. The Settling Defendants shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on their behalf with respect to all matters arising under or relating to this Consent Decree. The Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable rules of this Court, including, but not limited to, service of a summons.

B. This Consent Decree may be executed in any number of counterparts and, as executed, shall constitute one agreement binding on all of the Parties hereto, even though all of the Parties do not

sign the original or the same counterpart.

## XXII.  APPENDICES

The following appendices are attached to and incorporated into this Consent Decree:

Appendix I is the Damage Assessment/Restoration Plan and Environmental Assessment; Appendix II if

the Department of the Interior Natural Resource Damage Assessment and Restoration Fund

Assessment and Settlement Deposit Remittance Procedures; Appendix III is the Settlement Agreement

between the State of Maryland and PEPCO; and, Appendix IV is the Settlement Agreement between

the State of Maryland and ST Services.

## XXIII.  FINAL JUDGMENT

This Consent Decree and its Attachments constitute the final, complete, and exclusive

agreement and understanding among the Parties with respect to the settlement embodied in the Consent

Decree.  The parties acknowledge that there are no representations, agreements or understandings

relating to the settlement other than those expressly contained in this Consent Decree.

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall

constitute a final judgment between and among the United States, the State, and the Settling

Defendants.

SO ORDERED THIS __31st__ DAY OF __December__, 2002.

_____
UNITED STATES DISTRICT JUDGE